FILED
IN OPEN COURT

SEP 22 2020

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:20CR 208 |
| | ) | |
| ALJOHARAH ALTAMIMI, | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The parties stipulate that the allegations in the criminal indictment and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt.

1. In 2019, the Federal Bureau of Investigation received a tip involving an individual ("Person #1") who was receiving numerous United Parcel Service ("UPS") packages at a residence in Miami, Florida. Person #1 would leave the unopened packages in the communal area and then take the packages with him when he departed the residence. The packages were shipped from Firearms Company #1 and photographs of the shipping labels were provided to law enforcement.

2. Firearms Company #1 is a federally-licensed firearms dealer that sells firearms and firearm parts. Law enforcement determined that Person #1's account at Firearms Company #1 was used to make eight (8) separate purchases of firearm barrels (thirty-two (32) barrels in total) between on or about June 28, 2019 and on or about October 17, 2019. Five (5) of those orders, totaling twenty-three (23) firearm barrels, were sold and shipped to Person #1 at a Miami, Florida, address. Two (2) of those orders, totaling seven (7) firearm barrels, were sold and shipped to Person #1 at a second address. One (1) order of two (2) firearm barrels was sold to the defendant, ALJOHARAH ALTAMIMI in Mission Viejo, California and shipped to a Z.A. at the same

1

address. Public records checks failed to identify an individual named Z.A. residing at the address. ALTAMIMI is present in the United States on an F1 visa.

3. On or about January 23, 2020, the FBI learned of another order placed on January 22, 2020 with Firearms Company #1. The order details indicated nine (9) rifle barrels were ordered by Z.A. at 3535 South Ball Street, Apt 705, Arlington, Virginia (the "Arlington Residence"), with shipping to that residence. Public records checks failed to identify the named individual residing at this address, and the FBI does not have information that this individual actually exists.

4. The order for rifle barrels placed on January 22, 2020, included the following details: three Shilen Match Grade Barrel Remington 700 308 1 in 10" Twist Varmint Contour 26" Chrome Moly; two Shilen Match Grade Barrel Mauser Series 3 308 Winchester #3 Contour 1 in 10" Twist 25.5" Chrome Moly; four Shilen Match Grade Barrel Remington 700 308 Winchester 1 in 10" Twist Varmint Contour 26" Stainless Steel (the "January Shipment").

5. Firearms Company #1 provided the FBI with UPS tracking number. On January 24, 2020, UPS's online tracking system confirmed that the January Shipment was delivered to the Arlington Residence.

6. An FBI special agent interviewed an Assistant Manager at Shipping Store #1 in Arlington, VA. The interview revealed that ALTAMIMI and her son paid $1,205.30 for the January Shipment to be shipped via DHL Express Worldwide to Bahrain. The Shipping Store #1's Parcel Shipping Order Terms and Conditions forms listed the contents of the shipments as metal poles, which ALTAMIMI acknowledged by signing the forms. The Assistant Manager advised that shipment included the large cardboard box containing five items and the four cylindrical cardboard tubes, which the Assistant Manager had not yet packaged for shipment.

7. An FBI special agent visually inspected the January Shipment consisting of cylindrical cardboard tubes. Additionally, the shipping label, which was not removed, was partially covered by the DHL Express Worldwide label and listed Firearms Company #1 as the shipper and the shipping weight was listed as 45 pounds (consistent with a shipment containing nine rifle barrels).

8. The shipment consists of two boxes derived from the original January Shipment relabeled and waiting to be shipped to Bahrain, outside the United States. The return address for both shipments provided the defendant's name and address. The description on the first and second shipping order was "Metal Poles" with a Custom's value of $20.

9. On January 31, 2020, the manager of the Shipping Store #1 in Arlington, Virginia advised that ALTAMIMI and her son had returned to his place of business and were attempting to send four (4) sets of four (4) boxes each (16 boxes total) to the United Arab Emirates. The manager was instructed to process the transaction as normal. The Shipping Store #1 was informed by ALTAMIMI that the packages contained "steering poles" for automobiles. A visual inspection of the packages revealed that the packages consisted of long rectangular boxes taped together for shipping. The shape and size of the boxes is consistent with how one would package rifle barrels. The shipping label, which was not removed, identified the shipper ("J.W.")in Pollock, Louisiana (the "J.W. Shipment").

10. J.W. manufactures rifle barrels for sale over the internet. J.W. shipped 16 pre-fit rifle barrels chambered in .223, and the cost of each barrel was around $215-$220, totaling approximately $3,440. He shipped these to the defendant in Arlington, Virginia.

11. This second series of shipments was broken into four shipments addressed to two cities in Dubai, United Arab Emirates with return addresses on each package to Aljoharrah

ALTAMIMI at the Arlington Residence. The description on the shipping labels indicated the shipments contained "Steering Poles." Shipping Store #1 was paid $1,661.48 to ship these packages to the United Arab Emirates.

12. Judicially authorized searches of the January Shipment and J.W. Shipment in February 2020 confirmed that the packages contained rifle barrels that ALTAMIMI attempted to illegally export outside the United States in violation of U.S. law.

13. Firearms Company #1 provided law enforcement with information pertaining to four (4) additional orders from November 2019 consisting of eight (8) rifle barrels purchased by ALTAMIMI. These four (4) additional purchases were shipped to her previous residence in California.

14. Similarly, Firearms Company #2, a federally-licensed firearms dealer that sells firearms and firearm parts, provided law enforcement with information pertaining to two (2) orders from October 2019 and December 2019 consisting of seven (7) rifle barrels, although only one rifle barrel ultimately shipped to ALTAMIMI.

15. Additionally, Firearms Company #3, a federally-licensed firearms dealer that sells firearms and firearm parts, provided law enforcement with information pertaining to one (1) order from November 2019 consisting of three (3) rifle barrels. This order was made using an eBay account aljoharaaltamim0. This account is registered to ALTAMIMI. This order was shipped to ALTAMIMI at the California address.

16. Since November 2019, ALTAMIMI and her son have placed orders for, and received, approximately 49 rifle barrels.

17. The building manager at ALTAMIMI's Arlington Residence advised that ALTAMIMI received an exceedingly large amount of packages. Beginning January 8, 2020 to

February 7, 2020, ALTAMIMI received approximately 68 packages. The building manager advised that when packages are delivered to the residence, a concierge accepts delivery of the packages and logs them into their online system. The building manager advised that when these packages were received, the concierge logged the packages into their system and emailed ALTAMIMI.

18. On February 12, 2020, Firearms Company #1 advised law enforcement that an online order for six (6) rifles barrels was placed for the Arlington Residence totaling $1,034.75.

19. On February 19, 2020, ALTAMIMI traveled to the Shipping Store #2 located in Arlington, Virginia. At Shipping Store #2, ALTAMIMI attempted to ship three (3) cylindrical objects wrapped in brown paper to the same Bahrain address where they previously attempted to ship rifle barrels. ALTAMIMI described the items as "wooden rods." The weight of this shipment was 12.50 pounds, roughly half the weight of the February 12, 2020 order from Firearms Company #1 for six (6) rifle barrels.

20. ALTAMIMI placed this shipment into the mail stream at Shipping Store #2 where they would have been consolidated with packages from Virginia and ultimately placed among thousands of international packages being dispatched all over the world. Once ALTAMIMI placed the packages into the mail stream, she could not get them back to add or remove items. The three (3) items were subsequently searched pursuant to a warrant confirming they were three rifle barrels.

21. On February 24, 2020, FBI special agents executed a Court-authorized search warrant on ALTAMIMI's residence in Arlington Virginia. During this search, agents discovered and seized three (3) rifle barrels.

22. Under the Arms Export Control Act and its implementing regulations, the

International Traffic in Arms Regulations ("ITAR"), an individual in the United States who seeks to export defense articles, as set forth on the United States Munitions List ("USML"), outside of the United States must obtain authorization from the United States Department of State before the export can take place. These rifle barrels are defense articles on the USML and may not be exported without a license. Database checks revealed that ALTAMIMI has never obtained such authorization/license.

23. ALTAMIMI has been informed that she needed a license to export defense firearm parts outside of the United States. Firearms Company #1 explicitly informs firearms parts purchasers that firearm parts may not be exported without a license. Prior to placing an order, Firearms Company #1 requires purchasers to acknowledge that they understand and will comply with Firearms Company #1 Terms and Conditions. These Terms and Conditions state, "Further, under Federal Law (the Arms Export Control Act – AECA and International Traffic in Arms Regulations – ITAR), it is unlawful and illegal to export defense items without a U.S. State Department-issued license. See e.g. ITAR Section 121.1 Categories I to III." Moreover, ALTAMIMI received a similar notification regarding export restrictions on the invoices she received when she placed orders with Firearms Company #2 in October and December 2019. Additionally, when ALTAMIMI signed the Parcel Shipping Order Terms and Conditions at Shipping Store #2 she acknowledged that she was in compliance with U.S. export laws. The defendant also removed the labels from the shipping containers that identified the items as rifle barrels. The labels were located inside her purse during the subsequent search.

24. The acts taken by the defendant, ALTAMIMI, in furtherance of the offenses charged in this case, smuggling, including the acts described above, were done knowingly with the specific intent to violate the law.

25. The defendant acknowledges the foregoing statement of facts includes those facts necessary to support the plea agreement between ALJOHARAH ALTAMIMI and the United States. It does not describe each and every fact know to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding ALTAMIMI's conduct relating to the offense charged in this case.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____
Ronald L. Walutes, Jr.
Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, ALJOHARAH ALTAMIMI, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
ALJOHARAH ALTAMIMI

I am ALJOHARAH ALTAMIMI's attorney. I have carefully reviewed the above Statement of Facts with her. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

_____
Travis D. Tull, Esquire
Attorney for ALJOHARAH ALTAMIMI